**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**STEEL, METALS, ALLOYS AND HARD-WARE FABRICATORS AND WARE-HOUSEMEN, LOCAL 810, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WARE-HOUSEMEN AND HELPERS OF AMERICA, AFL–CIO, Respondent.**

No. 220, Docket 24825.

United States Court of Appeals Second Circuit.

Argued March 3, 1958.

Decided April 2, 1958.

Arnold Ordman, Atty., National Labor Relations Board, Washington, D. C. (Jerome D. Fenton, Gen. Counsel, Stephen Leonard, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Margaret M. Farmer, Atty., Washington, D. C., on the brief), for petitioner.

Henry Brickman, New York City, for respondent.

Before LUMBARD, WATERMAN and MOORE, Circuit Judges.

LUMBARD, Circuit Judge.

■ The National Labor Relations Board, having found the respondent union guilty of unfair labor practices, seeks enforcement of a cease and desist order pursuant to § 10(e) of the Labor Management Relations Act of 1947, 29 U.S. C.A. § 160(e). In opposition to the petition, respondent complains of various alleged errors in the proceedings before the trial examiner and of the scope of the order. Since we find no error in the proceedings and since the respondent, not having objected to the scope of the order before the Board, cannot now urge that the order is too broad, the petition is granted.

The proceeding before the examiner was for unfair labor practices by both the R. B. Wyatt Manufacturing Co. and the union. The company, as well as Local 810, was found to have engaged in unfair labor practices, but since it has complied with the Board's remedial order the petition before us requests enforcement only against the union.

Briefly, the trial examiner found the company had a collective bargaining contract in November 1955 with Local 1827, International Longshoremen's Association, which covered production workers and drivers. Five employees of the company, including one permanent driver, began picketing the company on November 5 on behalf of Local 810. To resolve the dispute, representatives of the company, Local 1827, and Local 810 agreed on January 16, 1956 that all drivers would come under a contract with Local 810 and that Local 1827 would continue to represent the production workers. The contract with Local 810 contained a union shop clause and when the drivers refused to join Local 810 various pressures were exerted on the company and, through the company and directly, on the drivers to force them to join Local 810. Picketing resumed March 21, 1956 and continued until the commencement of the present proceedings.

■ The recommended findings and order of the trial examiner were adopted by the Board. Local 810 was accordingly

ordered to cease and desist from restraining and coercing the employees in the exercise of the rights guaranteed in § 7 of the Labor Management Relations Act of 1947, 29 U.S.C.A. §§ 157, 158(b) (1), and from attempting to cause the employer to discriminate against an employee in violation of § 8(a) (3) of the Act, 29 U.S.C.A. §§ 158(a) (3), 158(b) (2). That Local 810 had engaged in these unfair labor practices is amply supported by the evidence and requires no discussion.

■ The first objection by the respondent is that it was not permitted fully to cross-examine Salvatore Bruno, the president of the company, regarding the interstate operations of the firm in order to discover whether or not the company had $50,000 in interstate sales, the usual minimum volume underlying the assumption of jurisdiction by the National Labor Relations Board. Bruno testified on direct examination that the company in 1955 had sales in excess of $500,000, that over half of its shipments were to points outside the state of New York, and that it also provided installation services outside New York state "easily" in excess of $50,000. At no time did the union present any evidence which even tended to question these figures. It argues, however, that it was improperly prevented from asking questions on cross-examination regarding the New York City sales tax return for 1955. This was a matter which the company did not wish to explore because of possible adverse effects on its competitive situation, and the trial examiner sustained an objection to this line of questioning. We see no abuse of discretion here, especially in view of the complete lack of any evidence tending to discredit Bruno's testimony. The trial examiner properly restricted the cross-examination. Indeed, the union does not now complain that it was prejudiced in that it could have shown that interstate volume was less than the requisite amount.

■ The respondent also objects to the trial examiner quashing a subpoena directed to Albert Anastasia, an official

of the International Longshoremen's Association, parent union of Local 1827. Anastasia talked with Bruno on January 14 and was present at the meeting on January 16 where it was agreed that Local 810 should represent the drivers. Respondent now contends that Anastasia may have been authorized to act for the drivers to transfer them to Local 810. Before the examiner respondent's counsel asserted only that the testimony was necessary as "part of the entire picture." Further, this belated and tenuous suggestion that Anastasia may have been a representative of the drivers to transfer them to Local 810 flies in the face of the direct testimony by six of the seven drivers that they had not authorized Local 810 to be their representative and is of questionable relevance to the issue of whether respondent subsequently attempted to coerce the membership of unwilling drivers. None of the six drivers on cross-examination was asked about any alleged authorization to Anastasia to act on his behalf in selecting the respondent as representative. We think the trial examiner properly refused such a frivolous demand to compel the attendance of a witness. See N. L. R. B. v. Blackstone Mfg. Co., 2 Cir., 1941, 123 F.2d 633.

A third objection by respondent is that the scope of the order is too broad since it prohibits certain conduct toward "any other employer" or employees of "any other employer."[1] Since this objection to the recommended order was not urged before the Board, it cannot be raised here. Precision Fabricators, Inc., v. N. L. R. B., 2 Cir., 1953, 204 F.2d 567; N. L. R. B. v. Hansen, 1 Cir., 1955, 220 F.2d 733.

The other objections do not merit discussion.

Order of enforcement granted.

[1] "B. The Respondent, * * * shall: 1. Cease and desist from: * * * (b) Causing or attempting to cause the Respondent Company or any other employer to discriminate in any manner against employees in violation of Section 8(a) (3) of the Act; (c) Restraining and coercing employees of the Respondent Company or of any other employer in the exercise of their rights guaranteed in Section 7 of the Act, except to the extent that such rights may be affected by an agreement requiring membership in a labor organization as a condition of employment, as authorized in Section 8(a) (3) of the Act * * * *"