LOCAL 900, INTERNATIONAL UNION OF ELECTRICAL, RADIO AND MACHINE WORKERS, AFL–CIO, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 83–1275.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 25, 1983.

Decided Feb. 10, 1984.

Barbara C. Somson, Washington, D.C., with whom Robert Friedman and James G. Mauro, Jr., Washington, D.C., were on the brief, for petitioner.

John D. Burgoyne, Asst. Gen. Counsel, N.L.R.B., Washington, D.C., with whom Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., was on the brief, for respondent.

Before WRIGHT and GINSBURG, Circuit Judges, and McGOWAN, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge McGOWAN.

McGOWAN, Senior Circuit Judge:

Petitioner Local 900 (the "union" or "Local 900") seeks reversal of a decision of the National Labor Relations Board (the "Board" or "NLRB"), and the Board cross-petitions for enforcement of that order. The Board held unlawful a contract clause that granted superseniority, with regard to layoff and recall, to the union's Financial Secretary and Recording Secretary. In doing so, the Board overruled prior precedent and established that superseniority with re-

gard to layoff and recall is lawful only when extended to union officers who are involved in on-the-job contract administration, such as grievance processing. We uphold the Board's new principle and enforce the order in its entirety.

## I

The facts of this case are quite fully set out in the NLRB's and Administrative Law Judge's ("ALJ") decisions, *Gulton Electro-Voice, Inc.*, 266 N.L.R.B. No. 84, 112 L.R.R.M. 1361 (Mar. 7, 1983), and will be repeated in abbreviated form here. Local 900 is the collective bargaining agent of the employees of Gulton Electro-Voice, Inc. The collective bargaining agreement has long contained a clause granting superseniority as to layoff and recall to a number of union officers. Pursuant to membership suggestion, the 1975 contract limited superseniority coverage to a smaller number of union officials, including the Recording Secretary and the Financial Secretary. The formal duties of the Recording Secretary involve keeping minutes of union meetings, preparing union correspondence, maintaining union records, and keeping the union membership and mailing list up to date. The formal duties of the Financial Secretary are to receive and account for union funds, pay union bills, furnish supplies, and transmit dues to the parent international union. The union does not dispute that neither of these officers engages in grievance resolution.

The parties stipulated that in the year preceding the General Counsel's charges the operation of the superseniority clause on behalf of the Financial Secretary did not affect any other employees, but the grant of superseniority to the Recording Secretary on various occasions, including November 5 and 6, 1980, caused some employees to be laid off when they otherwise would not have been. Local 900 has agreed to a moratorium on the exercise of superseniority for these officers pending the resolution of the present charges.

The General Counsel filed unfair labor practice charges against the union and Gul-

ton Electro-Voice in 1981, alleging that the grant of superseniority to these two officers unjustifiably discriminated against employees on the basis of union involvement, contrary to section 7 of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 157 (1976). After a hearing, the ALJ dismissed the complaint. In an extensive opinion tracing the shifting lines of Board precedent in this area, the ALJ concluded that superseniority for these officers served the lawful purpose of promoting both effective representation and the collective bargaining relationship. The Board reversed his decision 4–0. We now review the Board's decision under the familiar limitation that we must uphold the Board's action if it is reasonable and supported by the record. *See Ford Motor Co. v. NLRB,* 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979); *Automobile Salesmen's Union Local 1095 v. NLRB,* 711 F.2d 383, 385–86 (D.C.Cir.1983).

## II

Section 7 of the NLRA protects the rights of employees to engage in concerted activity to promote mutual interests, but it also protects employees' rights to refrain from such concerted activity. 29 U.S.C. § 157 (1976). In so doing, section 7 preserves an employee's right to be a "good, bad, or indifferent" union member. *See Radio Officers' Union v. NLRB,* 347 U.S. 17, 40, 74 S.Ct. 323, 335, 98 L.Ed. 455 (1954). Unions and employers may be held liable to employees for infringing their right to refrain from union activity. Coercive or discriminatory action by employers based on the exercise of section 7 rights may be unfair labor practices under section 8(a)(3), and similar action when performed by unions may violate section 8(b)(2). *See id.* at 39–42, 74 S.Ct. at 335–336. In some instances, however, discriminatory treatment may be permitted because it furthers other substantial statutory or business purposes. *See NLRB v. Great Dane Trailers, Inc.,* 388 U.S. 26, 34, 87 S.Ct. 1792, 1797, 18 L.Ed.2d 1027 (1967).

Unions have long included in collective bargaining agreements provisions granting

superseniority to various union officials. The Board did not address the possibility that the operation of such clauses may infringe section 7 rights until 1975. In *Dairylea Cooperative Inc.,* 219 N.L.R.B. 656 (1975), *enforced sub nom. NLRB v. Milk Drivers & Dairy Employees, Local 338,* 531 F.2d 1162 (2d Cir.1976), the Board was faced with a clause that gave the union-selected steward top seniority in his craft, which in effect gave the steward first choice in route selection, overtime assignments, vacation time, and shift, hour, and day-off selection, as well as priority with regard to layoff and recall. *Id.* at 657. The General Counsel did not contest the use of superseniority for purposes of layoff and recall, but he charged that the remainder of the clause "unlawfully encourages union activism and discriminates with respect to on-the-job benefits against employees who ... prefer to refrain from [section 7] activity." *Id.* In contrast, the union argued that there could be no violation of the Act because the employees who would arguably be prejudiced by the clause had ratified it as part of their contract. Alternatively, the union contended that the General Counsel had the burden of proving that the clause had a discriminatory purpose.

The Board agreed with the General Counsel, finding that it was reasonable to assume that the union would select as stewards only employees who were enthusiastic union members. By thus tying benefits to union activity, the clause created "a dependent relationship essentially at odds with the policy of the Act." *Id.* at 658. The General Counsel had not challenged the use of superseniority for layoff and recall, but the Board addressed the issue nevertheless, approving the practice and distinguish-

ing it from providing on-the-job benefits. Both practices tie job benefits to union activity, but superseniority for stewards for layoff and recall is lawful, the Board said, because "it furthers the effective administration of bargaining agreements on the plant level by encouraging the continued presence of the steward on the job. It thereby not only serves a legitimate statutory purpose but also redounds ... to the benefit of all unit employees." *Id.* The rule that emerged from *Dairylea,* therefore, was that steward superseniority that is not limited to layoff and recall is "presumptively unlawful," subject to proof by the party urging its legality to show that the clause is justified by a legitimate statutory purpose. *Id.* at 658–59.[1]

In 1977 the Board addressed the broader issue of superseniority not just for stewards, but for "functional union officer[s]." *United Electrical, Radio & Machine Workers of America, Local 623 (Limpco),* 230 N.L.R.B. 406 (1977), *enforced sub nom. D'Amico v. NLRB,* 582 F.2d 820 (3d Cir. 1978). The officer in *Limpco* was the local's Recording Secretary, who officially had no grievance adjustment or on-the-job contract administration obligations, although she did participate informally in such activities.[2] The *Limpco* decision was by aggregate majority. Two members concluded that superseniority regarding layoff and recall for functional union officers is presumptively lawful, *id.* at 407–08, while Member Murphy, casting the decisive vote, limited the presumption of legality to superseniority for "stewards and officers whose functions relate in general to furthering the bargaining relationship," *id.* at 408 n. 12. Two members dissented, concluding that "the only proper objective of superseniority is to

1. The Board rejected the union's arguments based on ratification and the burden of proof. 219 N.L.R.B. at 659. The Second Circuit enforced the Board's order for reasons largely in accord with the Board's. The court concluded that, when there was no direct evidence either way, the Board was entitled to infer that the union would only choose enthusiastic unionists to be stewards. 531 F.2d at 1165–66. The court held that it did not need to decide whether the union's proffered justification—the need to encourage employees to be stewards—could

ever be sufficient, because the union had not shown that other methods not related to job benefits were inadequate. *Id.* at 1166–67.

2. The Recording Secretary participated informally in grievance processing, and she assisted stewards in writing grievances, advised stewards and shop foremen in contract interpretation, and posted notices of union meetings. 230 N.L.R.B. at 408.

retain those union officials responsible for the processing of grievances on the job, and whose presence on the job is therefore required for the proper performance of this functions [sic]." *Id.* at 409 (Jenkins & Penello, dissenting).

In enforcing the Board's order, the Third Circuit considered the Board to have required the union to provide "credible proof that the individual in question was *officially assigned* duties which helped to implement the collective bargaining agreement in a meaningful way." 582 F.2d at 825 (emphasis added). The court appeared to have found the clause lawful at least in part because of the informal role the Recording Secretary played in the grievance process. *Id.* It is not at all clear that the grievance role was decisive for the Board,[3] but the Third Circuit's limiting language was one reason for the Board's decision in *American Can Co.,* 244 N.L.R.B. 736, 737 (1979), *enforced,* 658 F.2d 746 (10th Cir. 1981), which again was by aggregate majority with Member Murphy again providing the decisive vote. Two members concluded that the superseniority clause was invalid on its face, for it "applies to all union officers without regard to whether they act as stewards." *Id.* at 739 (Jenkins & Penello, concurring). Member Murphy found the clause lawful on its face, but concluded that the General Counsel had met his burden to prove that the application of the clause to the particular officers was not justified because the officers' activities did not further the bargaining relationship. *Id.* at 740. The two dissenting members went so far as to reject *Dairylea* and its progeny. Because the benefits of superseniority are too "remote and contingent" to have any significant effect on employees' exercise of their section 7 rights, the dissent would have found that superseniority provisions for any union official "which are duly negotiated by the parties and contained in their bargaining agreements are presumptively lawful."

*Id.* (Fanning & Truesdale, dissenting). The Tenth Circuit's enforcement, like the Third Circuit's in *Limpco,* rested on the union's failure to show substantial justification for granting superseniority to the particular union officials involved. *See* 658 F.2d at 757.

Although the Board addressed superseniority clauses in a number of contexts in other cases, the cases described above demonstrate the principal arguments surrounding the issue as well as the principal contours of the Board's decisions. After *Limpco,* despite the varying rationales of the Board's members, the decisions generally followed this pattern: So long as a superseniority clause was limited to layoff and recall and pertained to functional union officers, the Board would presume it lawful, and the General Counsel would have the burden of proving that the clause was unfairly discriminatory. If the General Counsel succeeded, the union and employer could still avoid liability by showing that the clause served a substantial, legitimate purpose. Although some courts, in enforcing Board orders, may have suggested that the unions bore an initial burden of justifying such clauses, the Board imposed that burden only when the clause extended beyond layoff and recall.

After further changes in the composition of the Board, the present case arose. The Board reviewed its previous decisions, weighed the arguments that had been presented on all sides of the issue, and returned to a position closer to that suggested in *Dairylea,* limiting the presumption of validity to layoff-and-recall superseniority for stewards and those officers with steward-like functions.

The Board started from the proposition that any form of superseniority for union officials is inherently at odds with section 7's guarantee of a disjunction between employment terms and union activity. Be-

---

**3.** *See, e.g.,* Otis Elevator Co., 231 N.L.R.B. 1128, 1129 (1977) ("Thus, in *Limpco,* we approved superseniority for the recording secretary—not because of her informal participation in grievances—but because we found that her official responsibilities bore 'a direct relationship to the effective and efficient representation of unit employees ....'" (quoting *Limpco* without further citation)).

cause of "the immediacy of attention that stewards can offer," because their attention benefits all employees, and because the stewards "need to maintain an on-the-job presence" in order to carry out their functions, superseniority for them, limited to layoff and recall, is justified. *Gulton,* 266 N.L.R.B. No. 84, at 10, 112 L.R.R.M. at 1364. Facilitating the stewards' role in this way, moreover, is consonant with one purpose identified in the title of the Labor Management Relations Act, Pub.L. No. 80–101, 61 Stat. 136, 136 (1947), namely, "to provide additional facilities for the mediation of labor disputes." *See* 266 N.L.R.B. No. 84, at 10, 112 L.R.R.M. at 1364. Finally, it followed from the Board's restrictive rationale that it would find lawful "only those superseniority provisions limited to employees who, as agents of the union, must be on the job to accomplish their duties directly related to administering the collective-bargaining agreement." *Id.* at 13, 112 L.R.R.M. at 1365.

The Board explicitly rejected the argument that superseniority was justified for other officers because it helped to maintain an effective and efficient bargaining relationship, an argument at the heart of the *Limpco* decision. The Board concluded that, however legitimate that goal might be, the NLRA precludes achieving it by linking job rights to union activity. Similarly, to the extent that superseniority serves this goal by attracting better union representatives, the method is illegitimate, for it is up to the union by its own devices, and not by job benefits, to achieve the quantum and quality of representation it deems appropriate. *See id.* at 10–12, 112 L.R.R.M. at 1364. *See also Milk Drivers,* 531 F.2d at 1166–67 (union should provide own incentives to attract qualified officers). Finally, the Board rejected the broad proposition that job retention was necessary for officers without on-the-job union duties in order to continue effective representation. In doing so, the Board relied on the following conclusions: (1) a laid-off officer can continue to serve in office; (2) the lay-off of officers is not unbearably disruptive; (3) unions often change officers in any event, so any replacement of officers due to layoffs cannot be held inherently to disrupt adequate union representation. *See* 266 N.L.R.B. No. 84, at 12, 112 L.R.R.M. at 1364.

■ As noted at the outset, we must uphold defensible Board decisions, regardless of how we might have decided the matter in the first instance. The Board in this case addressed all considerations relevant to the issue before it and frankly overruled any prior inconsistent precedent. Such is its prerogative, and the Board exercised it with a unanimity not seen since *Dairylea.* It surely has arrived at one reasonable resolution of the problem in a reasonable manner. We will not substitute our judgment on a question of policy when four members of the Board have brought their expert knowledge of labor relations to bear and have reached a unanimous conclusion. We therefore affirm the Board's new presumption of legality restricted to layoff-and-recall superseniority for union officials who must be on the job to administer the collective bargaining agreement.[4]

### III

■ The union does not contest that there is ample evidence to support the Board's application of the new rule in this case: The Recording Secretary had no union duties at the plant, and although the Financial Secretary had to meet with company officers once a month to go over the

---

**4.** The Board's rationale would support superseniority for any union officer whose contract administration responsibilities must be carried out on the job and whose responsibilities benefit all employees. For the reasons given *supra* at pages 1188–89, these criteria are most clearly met by stewards. By expressing its rule in terms of union officers who "perform steward or steward-like functions; i.e., grievance processing or other on-the-job contract administration responsibilities," 266 N.L.R.B. No. 84, at 1–2, 112 L.R.R.M. at 1361, the Board suggests that tasks other than grievance processing may justify superseniority, but it gives no examples. We assume that it has other examples in mind or that it is willing to leave the matter to further litigation.

dues-withholding plan, performing this duty while at work was a matter of convenience, not necessity, and lay-off would in no way interfere with her continued performance of it. *See id.* at 14, 112 L.R.R.M. at 1365. The union does, however, challenge the application of the rule in this case on two grounds, waiver and retroactivity.

## A. *Waiver*

■ Local 900 argues that, even if its superseniority clause as applied to these two officers is discriminatory under section 7, the employees waived the protection of section 7 by ratifying the contract that included the clause. Indeed, at the instigation of employees in 1975, the clause had been narrowed to include fewer officers, suggesting that the waiver, if it is such, was full and knowing. The union relies primarily on a line of cases, including one from this circuit, *Fournelle v. NLRB,* 670 F.2d 331, 337–38 (D.C.Cir.1982), whose basic conclusion was reaffirmed by the Supreme Court with the following language:

> Such waivers are valid because they "rest on 'the premise of fair representation' and presuppose that the selection of the bargaining representative 'remains free.'" ... Thus a union may bargain away its members' economic rights but it may not surrender rights that impair the employees' choice of their bargaining representative.

*Metropolitan Edison Co. v. NLRB,* —— U.S. ——, 103 S.Ct. 1467, 1476, 75 L.Ed.2d 387 (1983) (citations omitted).

The union's reliance on *Metropolitan Edison* and the waiver principle is misplaced. *Metropolitan Edison* and *Fournelle* were cases in which union officers were singled out for more severe sanctions for violation of their collective bargaining agreements' no-strike pledges. The courts upheld these discriminatory measures as necessary for the enforcement of the unions' lawful waivers of the economic right to strike. *See Metropolitan Edison,* 103 S.Ct. at 1476–77; *Fournelle,* 670 F.2d at 341. The disciplinary measures would not inhibit employees from becoming union members or officers, but

only from participating in strike activity which they legally foreswore in their contract.

The right at stake in the present case, however, is not economic, but rather is said to affect employees' choices with regard to their level of participation in union affairs. Superseniority presumably encourages employees to become active supporters of the incumbent union in the hope that their efforts will win them union office and, thereby, greater job security. Thus superseniority can coerce employees in deciding whether to support the union, and the Supreme Court has held that such rights are not waivable, *see NLRB v. Magnavox Co.,* 415 U.S. 322, 325–26, 94 S.Ct. 1099, 1102, 39 L.Ed.2d 358 (1974). Indeed, in *Radio Officers'* itself the Supreme Court rejected the claim, similar to Local 900's, that if a union, as exclusive bargaining agent, negotiated a contract that discriminated with respect to wages in favor of union members, its only potential liability would be for breach of its representational duties, but not for violating section 8(b). *See* 347 U.S. at 47–48, 74 S.Ct. at 339. Because superseniority for union officials can affect employees' decisions regarding their selection of representatives, we conclude that the discrimination the Board found in this case is not amenable to waiver.

## B. *Retroactivity*

The union's other argument is that it was unfair for the Board to enforce its new rule retroactively by applying it in the case in which it was first announced. The Board meets this argument at the threshold, claiming that section 10(e) of the NLRA, 29 U.S.C. § 160(e) (1976), bars our review of the retroactivity issue.

1. *The Section 10(e) Bar.* Section 10(e) provides that "[n]o objection that has not been urged before the Board ... shall be considered by [a reviewing] court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." The Board argues that the union did not raise retroactivity in the initial litigation, and that because it did not do

so and did not move for reconsideration of the Board's decision, section 10(e) forecloses litigation of the issue in this court.

█ In general, section 10(e) serves two purposes. First, it has a notice function that ensures that the Board has the opportunity to resolve all issues properly within its jurisdiction.[5] *See Marshall Field & Co. v. NLRB,* 318 U.S. 253, 255–56, 63 S.Ct. 585, 586, 87 L.Ed. 744 (1943) (per curiam). Second, by requiring that all contestable issues be raised first before the Board or not at all, *see NLRB v. Cheney California Lumber Co.,* 327 U.S. 385, 389, 66 S.Ct. 553, 554, 90 L.Ed. 739 (1946), section 10(e) insures against repetitive appeals to the courts, *see NLRB v. GAIU Local 13–B,* 682 F.2d 304, 311 (2d Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983). The dual themes of notice and adjudicatory efficiency can be seen in judicial treatment of section 10(e) over the years.

Consistent with the fact that the statute requires objection to the Board, and not discussion by the Board, before an issue may be presented in court, the early Supreme Court cases emphasized that section 10(e) represented the "salutary policy ... of affording the Board *opportunity* to consider on the merits questions to be urged upon review of its order," *Marshall Field & Co. v. NLRB,* 318 U.S. at 256, 63 S.Ct. at 586 (emphasis added). Section 10(e) makes it important to "apprise the Board that [the party] intend[s] to press the question" on appeal. *Id.* at 255, 63 S.Ct. at 586.[6]

Conversely, discussion of an issue by the Board does not necessarily prove compliance with section 10(e). In *Woelke & Romero Framing, Inc. v. NLRB,* 456 U.S. 645, 665–66, 102 S.Ct. 2071, 2082–83, 72 L.Ed.2d 398 (1982), for example, the Board had discussed and decided an issue not expressly presented to it by the parties, and the court of appeals affirmed the Board. The Supreme Court held that because no objection to the Board's disposition was presented to the Board through a motion for reconsideration or rehearing, the court of appeals had been without jurisdiction to decide the matter.[7] Similarly, in *International Ladies' Garment Workers' Union v. Quality Manufacturing Co.,* 420 U.S. 276, 281 n. 3, 95 S.Ct. 972, 975 n. 3, 43 L.Ed.2d 189 (1975), the Board had imposed liability for reasons different from those charged by the General Counsel, and no objection was raised by post-decision motion. The Supreme Court held that the propriety of the Board's theory of liability could not be raised on appeal.

In neither case was the Board deprived of the opportunity to discuss relevant issues—in *Woelke* whether certain actions violated section 8(b), in *ILGWU* whether certain actions violated section 8(a). Rather, the problem was that the Board was not given notice of the parties' objections to the

---

**5.** A court can always invalidate Board action that is patently beyond the Board's jurisdiction, even if the jurisdictional challenge was never presented to the Board. *See NLRB v. Cheney California Lumber Co.,* 327 U.S. 385, 388, 66 S.Ct. 553, 554, 90 L.Ed. 739 (1946). *See also Detroit Edison Co. v. NLRB,* 440 U.S. 301, 312 n. 10, 99 S.Ct. 1123, 1130 n. 10, 59 L.Ed.2d 333 (1979); *NLRB v. Blake Constr. Co.,* 663 F.2d 272, 284 n. 34 (D.C.Cir.1981) (citing cases).

**6.** *See also NLRB v. Seven-Up Bottling Co.,* 344 U.S. 344, 350, 73 S.Ct. 287, 290, 97 L.Ed. 377 (1953) (Company's objection was "not adequate notice that the Company intends to press the specific issue it now raises"); *May Department Stores Co. v. NLRB,* 326 U.S. 376, 387 n. 5, 66 S.Ct. 203, 210 n. 5, 90 L.Ed. 145 (1945) (objection in *Marshall Field* "was too general to apprise the Board of an intention to bring up the" specific question appealed, but

objection here, though "short of desirable specificity, ... put the Board on notice of the issue now presented").

**7.** Woelke and the General Counsel charged before the Board that the union sought a contract clause that violated section 8(e), and that, because the clause violated section 8(e), the union's picketing to obtain the invalid clause was a violation of section 8(b)(4). The Board held that the clause did not violate section 8(e) and that picketing to obtain a legal clause did not violate section 8(b)(4). *See* 456 U.S. at 648–50, 102 S.Ct. at 2073–74. The Supreme Court held that the legality of picketing to obtain a clause that did not violate section 8(e) was not presented to the Board, hence the only way to get judicial review of the issue, consonant with section 10(e), was to petition the Board for rehearing or reconsideration first. *See id.* at 665–66, 102 S.Ct. at 2082–83.

Board's solutions, and hence the Board had no opportunity to address those objections. As the Court has stated in an analogous context, "Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952).

■ In short, the statute requires notice of objection.[8] Although briefing and argument before the Board are desirable, for they enhance the Board's opportunity to bring its expertise to bear on the problem and to provide the reviewing court with the Board's views, *see NLRB v. Sambo's Restaurant, Inc.*, 641 F.2d 794, 796 (9th Cir. 1981) (quoting *NLRB v. Allied Products Corp.*, 548 F.2d 644, 653 (6th Cir.1977)), section 10(e) does not require such procedures and does not require any Board action. Thus the fact that the Board has or has not

discussed an issue raises no necessary inferences with respect to section 10(e).

Based on these observations, some applications of section 10(e) are obvious. For example, when a party consents to the Board's order and agrees not to contest it, the court, in enforcing the order, is without power to modify it. *NLRB v. Ochoa Fertilizer Corp.*, 368 U.S. 318, 82 S.Ct. 344, 7 L.Ed.2d 312 (1961). Similarly, if a party fails to object to findings and conclusions of an administrative law judge, and the Board then adopts the ALJ's decision, the party may not subsequently challenge those findings and conclusions in court.[9] And, given the extremely limited role courts play in fact finding in Board cases, it makes eminent sense in most cases to require parties to straighten out factual questions before the Board, either in the initial litigation or by motion after the Board's decision.[10] There are other cases, however, where failure to object to the Board by way of post-decision motion has not prevented judicial review, for the motion clearly would have been an empty formality, serving the purposes of neither notice nor efficiency.[11]

8. That the inquiry focuses on notice has been recognized recently by several panels of this court. *See Szewczuga v. NLRB*, 686 F.2d 962, 971 (D.C.Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 1798, 76 L.Ed.2d 363 (1983); *Consolidated Freightways v. NLRB*, 669 F.2d 790, 793–94 (D.C.Cir.1981); *NLRB v. Blake Constr. Co.*, 663 F.2d 272, 283–84 & n. 34 (D.C.Cir.1981).

9. *See, e.g., Cheney California Lumber*, 327 U.S. at 387–89, 66 S.Ct. at 553–54; *Szewczuga v. NLRB*, 686 F.2d 962, 970–71 (D.C.Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 1798, 76 L.Ed.2d 363 (1983); *NLRB v. Colonial Haven Nursing Home*, 542 F.2d 691, 699 (7th Cir. 1976); *NLRB v. Apico Inns of Cal., Inc.*, 512 F.2d 1171, 1174 (9th Cir.1975); *NLRB v. Steel, Metals, Alloys & Hardware Fabricators & Warehousemen, Local 810*, 253 F.2d 832, 833–34 (2d Cir.1958).

10. *See, e.g., NLRB v. Cardox Div. of Chemetron Corp.*, 699 F.2d 148, 153 n. 10 (3d Cir. 1983); *GAIU Local 13–B*, 682 F.2d at 311–12; *Hedstrom Co. v. NLRB*, 629 F.2d 305, 312 (3d Cir.1980) (en banc), *cert. denied*, 450 U.S. 996, 101 S.Ct. 1699, 68 L.Ed.2d 196 (1981); *NLRB v. STR, Inc.*, 549 F.2d 641, 642 (9th Cir.1977) (per curiam); *Glaziers' Local No. 558 v. NLRB*, 408 F.2d 197, 202–03 (D.C.Cir.1969). *But cf. NLRB v. Jones & Laughlin Steel Corp.*, 331 U.S. 416, 428, 67 S.Ct. 1274, 1281, 91 L.Ed. 1575 (1947)

("When circumstances do arise after the Board's order has been issued which may affect the propriety of enforcement of the order, the reviewing court has discretion to decide the matter itself or to remand it to the Board for further consideration."); *Glaziers' Local No. 558*, 408 F.2d at 203–04 (McGowan, J., concurring) (where petitioner waived hearing, stipulated to facts, and did not file brief before Board, failure to petition to correct factual error is fatal, although "I would normally have felt that a remand to the Board would have been necessary").

11. Thus in *Teamsters Local 115 v. NLRB* (Haddon House), 640 F.2d 392, 398 (D.C.Cir.1981), *cert. denied*, 454 U.S. 827, 837, 102 S.Ct. 119, 141, 70 L.Ed.2d 102, 118 (1981), this court found that the employer's failure to petition the Board for reconsideration of the Board's new remedies was excused by the fact that the union had petitioned the court for review two days after the Board's decision: the union's petition to this court in practical effect deprived the Board of jurisdiction over the case, and a petition to the Board would therefore have been fruitless. (These were "extraordinary circumstances," within the meaning of section 10(e), according to the court. *Id.*) Similarly, objections based upon facts which arose after the NLRB petitioned for enforcement

Finally, perhaps the most delicate 10(e) questions arise in cases such as the one before us, where a party asserts that it has objected to the Board, but the objection is not unmistakable. In such cases, the reviewing court's inquiry must be guided by the purposes of section 10(e) and necessarily will be highly fact specific. Thus an objection to the Board that the trial examiner "had erred 'in making each and every recommendation'" was insufficient notice of the employer's claim that the amount of a back-pay remedy should be reduced by the amount of unemployment compensation received by the affected employees, *Marshall Field & Co. v. NLRB*, 318 U.S. at 255, 63 S.Ct. at 586, and an objection that the trial examiner's suggested remedy was contrary to and unsupported by the facts was inadequate notice of the employer's claim that back-pay calculations should have included seasonal adjustments, *NLRB v. Seven-Up Bottling Co.*, 344 U.S. at 349–50, 73 S.Ct. at 290, but the objection that the proposed remedy was "'not supported or justified by the record'" was sufficient notice of the company's objection to the breadth of the Board's remedy in *May Department Stores Co. v. NLRB*, 326 U.S. at 386 n. 5, 66 S.Ct. at 209 n. 5. The factors that convinced the Court in *May Department Stores* that the objection was adequate were that "[t]he paragraph in issue is a standard form of order frequently used by the Board; the same question with respect to an almost identical order was considered by this Court in [another case], and has been a frequent subject of dispute in the Circuit Courts...." *Id.* at 387 n. 5, 66 S.Ct. at 210 n. 5 (citations omitted).

▮ Similar circumstances support reviewability in this case. Local 900 opposed before the ALJ the remedies later adopted by the Board. In its cross-exceptions to the Board, the union endorsed the ALJ's decision in its favor and urged the Board not to disrupt the wishes of the union's membership regarding superseniority. Thus the

union made it clear to the Board that it would object to the remedies the Board adopted. But the Board argues now that the union's present objection to applying these remedies pursuant to a new rule of law has never been presented to the Board. It is true that retroactivity is a distinct issue and entails different concerns from those underlying a typical remedial order, but we believe that the Board had adequate notice of Local 900's inclination to object on that basis.

First, we think that, although the term "retroactivity" was not used, the union's cross-exceptions raised the issue adequately. *Cf. NLRB v. Blake Construction Co.*, 663 F.2d 272, 284 (D.C.Cir.1981) (due process objection raised, though petitioner had not expressly mentioned "due process" to the Board). The General Counsel's exceptions to the ALJ's decision urged the Board to adopt the views expressed by two Board members in the *American Can* decision. *See* Exceptions of the General Counsel at 3–4 (Jan. 25, 1982), Petitioner's Appendix ("App.") at 153–54. The union, however, supported the ALJ's decision, *see* Cross-Exceptions of Local 900, at 1, 3 (Feb. 8, 1982), App. at 155, 157, which rejected the proffered rationale from *American Can, see* ALJ's Decision at 28–32, App. at 145–49. Local 900 also urged the Board to "act cautiously and not interfere lightly" with the superseniority clause. Cross-Exceptions of Local 900, at 3, App. at 157. These statements could have alerted the Board to the union's objection to sanction under the new rationale offered by the General Counsel.

Whatever ambiguity the cross-exceptions may have left is eliminated by the context in which they were raised. Thus our second basis is that in light of the union's objection to the remedy and to the new rationale, it is inconceivable that the Board did not understand that the union objected on retroactivity grounds and that the union would raise the issue on appeal. Retroactivity is neces-

were held to be reviewable by the Court in *NLRB v. Jones & Laughlin Steel Corp.*, 331 U.S. 416, 427–28, 67 S.Ct. 1274, 1280–81, 91

L.Ed. 1575 (1947), despite the literal violation of section 10(e).

sarily an issue any time adjudication results in a new rule of law. *See SEC v. Chenery Corp.,* 332 U.S. 194, 203, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947); *Retail, Wholesale & Department Store Union v. NLRB,* 466 F.2d 380, 390 (D.C.Cir.1972); *NLRB v. Majestic Weaving Co.,* 355 F.2d 854, 860 (2d Cir. 1966). The problem of retroactivity has arisen frequently before the Board, which, "[d]espite substantial and repeated scholarly and judicial criticism, ... has largely ignored the rule making process, and has chosen rather to fashion new standards and to abrogate old ones in the context of case-by-case adjudication," *Retail, Wholesale,* 466 F.2d at 388.[12] Courts, too, have substantial experience with the problem. *See, e.g., id.* at 390 ("courts have not infrequently declined to enforce administrative orders when in their view the inequity of retroactive application has not been counterbalanced by sufficiently significant statutory interests").

The union's cross-exceptions to the ALJ's decision, its opposition to the proposed remedy, and the Board's familiarity with retroactivity suffice, as in *May Department Stores,* to preserve the issue for appeal. In combination, these circumstances should have alerted the Board to the union's objection to retroactive application of the new rule, thereby providing the Board opportunity to deal with the merits of the claim. The Board also should have realized that the union would urge the objection on appeal.[13] Thus although the objection may not have been as specific as one would like, it was statutorily sufficient.[14]

■ 2. *The Merits of the Retroactivity Claim.* In determining whether a new rule developed in adjudication should be given retroactive effect, the ill effects of "retroactivity must be balanced against the mischief of producing a result which is contrary to a statutory design or to legal and equitable principles." *SEC v. Chenery Corp.,* 332 U.S. 194, 203, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947). More specifically, courts often consider five factors in evaluating that balance:

(1) whether the particular case is one of first impression, (2) whether the new rule represents an abrupt departure from well established practice or merely attempts to fill a void in an unsettled area of law, (3) the extent to which the party against whom the new rule is applied relied on the former rule, (4) the degree of the burden which a retroactive order imposes on a party, and (5) the statutory interest in applying a new rule despite the reliance of a party on the old standard.

---

**12.** *See also H. & F. Binch Co. v. NLRB,* 456 F.2d 357, 365 (2d Cir.1972) ("It is indeed surprising that the Board should so consistently have refused ... to develop techniques of prospective ruling and overruling ....").

**13.** This holding is also in accord with this court's decision in *Burinskas v. NLRB,* 357 F.2d 822 (D.C.Cir.1966). There the trial examiner found violations of sections 8(a)(1) and 8(a)(3) by the employer, but the Board dismissed the complaint. This court remanded the case to the Board, which issued an order to show cause why it should not adopt the trial examiner's report. *The employer objected, but the Board adopted the examiner's decision.*

On appeal, the employer argued that the Board's remedy was inappropriate because it failed to toll the employer's back-pay obligation for the period during which it enjoyed a favorable decision. The Board argued the issue was foreclosed by section 10(e), since the employer had objected merely to the trial examiner's proposed "remedy." *See id.* at 824–25. The court held the objection was adequate. "The Board ... could not properly have ignored the exception to the remedy .... We think it more likely than not that the Board, with its expert sensitivities alerted by some considerable past familiarity with the tolling issue ..., took that more limited objection to be comprehended within the broader exception ...." *Id.* at 825. So, too, in our case, it is inconceivable that the Board did not understand the "more limited objection to be comprehended within the broader exception." (The court in *Burinskas* had an alternative basis for its decision. It found that the employer had raised the tolling question with a compliance officer at the Board after the Board's decision, and the compliance officer replied that the Board's decision had resolved the issue adversely to the company. This was a separate, and according to the court adequate, form of notice. *See id.* at 825–26.)

**14.** Because we hold that the union objected adequately prior to the Board's decision, we need not address the question of the need for a motion for reconsideration.

*Retail, Wholesale & Department Store Union v. NLRB,* 466 F.2d 380, 390 (D.C.Cir. 1972).

■ For a variety of reasons, it is often appropriate to apply a rule in the first case in which a given problem arises, *see id.,* but the present case is hardly one of first impression; as is evident from the discussion in part II, superseniority clauses have been litigated for years. At the same time, however, the reasons against applying a new rule in a case of second impression, principally "lack of notice and the degree of reliance on former standards," *id.* at 390 n. 22, are not compelling here. The cases since 1975 have demonstrated widely divergent views among the Board members and have been decided on several bases. The union surely had notice that superseniority clauses were under attack and were not wholly secure, and there is no evidence that the union relied on any previous Board rule in fashioning this particular superseniority clause. Given the confusion in the Board's and courts' decisions over the years, the new rule cannot be called an abrupt break with a well-settled policy; the unanimity of the new decision, moreover, looks much like an "attempt[ ] to fill a void."

Neither does the union fare well on the third factor—reliance. The union's superseniority clause was last modified in 1975, the year in which *Dairylea* was decided. There is no evidence that the union considered, much less relied on, *Dairylea* in writing this clause. Local 900 would have us infer reliance on *Limpco* and *Otis Elevator* simply because those cases allowed superseniority for recording secretaries. In affirming the Board's decision in *Limpco,* however, the Third Circuit found it crucial that the officer participated in grievance processing, *see supra* pp. 1187–88, a fact not present here, and *Otis Elevator* was not reviewed by a court. Any reliance the union may have placed on those decisions, therefore—remembering that none was shown—was not altogether well placed.

We do not perceive any great hardship in enforcing the Board's order here. The union has imposed its own moratorium since 1981 on application of the superseniority clause. Thus back-pay requirements, other than interest, have not been piling up since then. Also, although the record is blank on the amount of money involved, it is hard to imagine that the liability due to superseniority for one officer will be great. Finally, inasmuch as we have not found any reliance by Local 900 on the old rule, there is nothing to oppose the statutory interest in applying the new rule. In consideration of all these factors, we conclude that the Board's order should be, and is hereby, enforced in its entirety.

*It is so ordered.*