767 F.2d 1100
 119 L.R.R.M. (BNA) 3460, 103 Lab.Cas. P 11,537
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
ENSIGN ELECTRIC DIVISION OF HARVEY HUBBLE, INC., and United
Steelworkers of America, Local 5925, AFL-CIO-CLC,
Respondents.
Center on National Labor Policy, Inc., Amicus Curiae.
 No. 84-1658.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 6, 1985.
Decided July 22, 1985.
 
 William T. Payne, Pittsburgh, Pa., P. Thomas Krieger, Huntington, W.Va. (Paul A. Billups, Jenkins, Fenstermaker, Krieger, Kayes & Farrell, Huntington, W.Va., Carl B. Frankel, Pittsburgh, Pa., on brief), for respondents.
 John D. Burgoyne, Asst. Gen. Counsel, Washington, D.C. (Sharon Margolis Apfel, N.L.R.B., Rosemary M. Collyer, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Washington, D.C., on brief), for petitioner.
 (Michael Ernest Avakian, North Springfield, Va., Edward F. Hughes, Center on Nat. Labor Policy, Inc. on brief), for amicus curiae.
 Before MURNAGHAN and CHAPMAN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 MURNAGHAN, Circuit Judge:
 
 
 1
 A collective bargaining agreement provided super-seniority for certain executive personnel of a union, inter alia, the recording secretary and the treasurer, of the United Steelworkers of America, Local 5925 AFL-CIO-CLC. The National Labor Relations Board heard charges by a member of the employer's work force against both the employer and the union challenging the maintenance and enforcement of a preferential seniority clause as an unfair labor practice under the National Labor Relations Act, 29 U.S.C. Secs. 158(b)(1)(A) and (2), 8(a)(1) and (3). The NLRB, finding that the challenge was justified, followed its recent decision in Gulton Electro-Voice, Inc., 266 N.L.R.B. 406, (1983), enforced sub nom. Local 900, International Union of Electrical Workers v. NLRB, 727 F.2d 1184 (D.C.Cir.1984) and determined that super-seniority preference should not have been accorded the union officers who benefited by super-seniority because their duties did not involve them in grievance processing or on-the-job contract administration. Gulton overruled a prior Board decision in United Electrical, Radio and Machine Workers of America, Local 623 ("Limpco"), 230 N.L.R.B. 406 (1977), enforced sub nom. Anna M. D'Amico v. NLRB, 582 F.2d 820 (3rd Cir.1978) and indicated that it would approve as lawful "only those super-seniority provisions limited to employees, who, as agents of the union, must be on the job to accomplish their duties directly related to administering the collective bargaining agreement." Gulton, supra, 266 N.L.R.B. at 409.
 
 
 2
 The volte-face occasioned by the Gulton decision could not have come as a great surprise. The question of the extent to which functional union officials could be insulated from lay-off in preference to rank and file union members had been debated in a number of cases with vocal dissents[1] and it could not, therefore, have been said that the law was settled in such a way as to make unjust the retroactive application of Gulton in the instant case.[2] Accord, NLRB v. Niagara Machine & Tool Works, 746 F.2d 143 (2d Cir.1984); Local 900, supra, 727 F.2d 1184 (D.C.Cir.1984); Local 1384, United Auto, Aerospace and Agricultural Implement Workers of America UAW v. NLRB, 756 F.2d 482 (7th Cir.1985).
 
 
 3
 The Board's decision must be upheld on appeal if it is reasonable and supported by the record. Ford Motor Co. v. NLRB, 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979). We are satisfied that the NLRB decision was supported by the record and, consequently, we grant enforcement of the NLRB order dated January 25, 1984.
 
 
 4
 ENFORCEMENT GRANTED.
 
 HAYNSWORTH, Senior Circuit Judge, dissenting:
 
 5
 I respectfully dissent.
 
 
 6
 It seems to me grossly unfair, in the circumstances of this case, to apply the Gulton rule retroactively. We are told that the back pay award would bankrupt the local union and would constitute a severe economic burden upon the employer, and the reinstatement of nine or more former employees would occasion serious disruptions in the lives of present employees in a work force which, we are informed, has dwindled to approximately fifteen. Furthermore, it would occasion serious disruptions and uncertainties in the management of labor relations contracts when parties are called upon to conduct themselves as if a narrow majority of Board members, instead, had been a dissenting minority.
 
 
 7
 This provision for super-seniority first came into the contract before the Labor Board had addressed the problem, and was carried over into the agreement dated February 10, 1979. At the time of the enforcement of the super-seniority clause in the 1979 agreement, the Board's 1977 decision in Limpco appeared to be controlling. While there had been a strong dissent in that case, a majority of the Board members had aligned themselves in support of the position of the union and the employer in this case. They were entitled to place substantial reliance upon that decision of the Board. The presence of the dissent would diminish the strength of that reliance, but it should not dissipate it, when Limpco was recent and Gulton a good four years into the future. Even if attention is focused on the contract renewal in 1979, one could not realistically expect of the union the kind of prescience that might have led them to forego their contractual advantage.
 
 
 8
 At the time the parties acted, enforcement and compliance with the agreement between the union and the employer was the only possible course open to them. Had the parties anticipated that in some future year the Board would come down with its decision in Gulton, and the union had then waived its contractual right and the employer broken the super-seniority clause by laying off the union's recording secretary and its treasurer, they would have immediately exposed themselves to indefensible suits by the secretary and the treasurer. The secretary and the treasurer could have alleged and proved a violation by the union of its fiduciary duty of fair representation and the breach of the collective bargaining agreement by the employer. Neither the union nor the employer could offer any defense, and they would have suffered judgment against them both. A retroactive application of Gulton, however, imposes substantial sanctions upon them because they did not take a course which, at the time, was clearly unlawful.
 
 
 9
 The business of the employer has been a shrinking one. Its work force of over 260 people had shrunk to 68 by the time of the hearing before the administrative law judge. We are informed that it has continued to dwindle until now it is only approximately 15. Natural attrition cannot be expected to make room for nine or more other employees to whom the employer is required to offer reinstatement. Enforcement of the order will likely require the discharge of some of the present employees, not just the discharge of the recording secretary and treasurer.
 
 
 10
 The general purpose and design of the federal labor relations laws is to promote peace and order in industrial relations. That purpose is not served by a retroactive application of a new rule which would introduce great uncertainty into the administration of a collectively bargained agreement. Unless enforcement or maintenance of a particular contractual provision has been held by the National Labor Relations Board to be an unfair labor practice, the parties to such a contract should be able to act in compliance with their agreement with assurance that the Labor Board will not later apply a different rule to their conduct.
 
 
 11
 I would not punish the union and the employer for compliance with their bargain when, at the time they acted, their super-seniority provision had been approved by the National Labor Relations Board. It was simply beyond the capacity of the parties to elevate the views of the dissenters to an official declaration of the law by the Board. Without such a declaration there was no alternative to compliance with their bargain.
 
 
 
 [1]
 Prior to the Gulton decision the Board considered the issue of preferential seniority for certain union officers on a number of occasions. The issue was first raised in Dairylea Cooperative, Inc., 219 N.L.R.B. 656 (1975), enforced sub nom. NLRB v. Milk Drivers & Dairy Employees Local 338, 531 F.2d 1162 (2d Cir.1976), where the Board found a super-seniority provision on layoff and recall lawful for union shop stewards because their duties "furthered the effective administration of the bargaining agreement on the plant level by encouraging the continued presence of the steward on the job." Id. at 658. However, the Board refused to extend super-seniority to union shop stewards beyond layoff and recall; such provisions were presumptively unlawful, the burden of rebutting that presumption falling on the party asserting their lawfulness
 Two years later, in Limpco, supra, 230 N.L.R.B. 406 (1977), the Board was once again confronted with the same troubling issue. In that case the challenged super-seniority provision accorded preferential status in layoff and recall to the union's recording secretary, who performed no steward-like job functions. A Board majority upheld the preferential seniority provision, reasoning that the union officer in question held official responsibilities which bore "a direct relationship to the effective and efficient representation of unit employees." Id. at 407-08. The union officer was, therefore, entitled to the same presumption accorded the union steward since she was just as involved in the administration of the collective bargaining agreement.
 Nevertheless, the dissenters in Limpco made clear that the matter was not neatly settled among the Board members. According to them, super-seniority provisions favoring union officials could only be held presumptively valid when the officers' responsibilities concerned on-the-job grievance adjustment. Only when the union officer functioned to process grievances and enforce the collective bargaining agreement on the job could the discriminatory effect of the super-seniority provision be justified.
 The division of viewpoints was made even clearer in The American Can Company, 244 N.L.R.B. 736 (1979), enforced, 658 F.2d 746 (10th Cir.1981), where it was plainly stated that the "... Board members have widely divergent views on Dairylea issues...." Id. at 737. Two members in dissent disagreed with any restrictions placed on super-seniority by Dairylea and its progeny. Member Murphy, in her concurring opinion, employed the reasoning of the Dairylea line of cases but concluded that the activities of the officers in question (a union trustee and guard) did not further the collective bargaining relationship. Members Jenkins and Penello, the dissenters in Limpco, found the super-seniority clause in question invalid on its face and would only allow union officers to benefit from super-seniority where the officers served as shop stewards or engaged in the administration of the contract at the work place and during their hours of employment. See also Otis Elevator Company, 231 N.L.R.B. 1128 (1977) (dissent by Jenkins and Penello); Expedient Services, Inc., 231 N.L.R.B. 938 (1977); Allied Industrial Workers of America (Allen Testproducts), 236 N.L.R.B. 1368 (1978) (dissent by Jenkins and Penello); APA Transport Corp., 239 N.L.R.B. 1407 (1979) (dissent by Fanning; partial dissent by Truesdale); McQuay-Norris, Inc., 258 N.L.R.B. 1397 (1981) (dissent by Fanning).
 Hence, the Board's Gulton decision cannot be considered an abrupt break from prior precedent. See Landahl v. PPG Industries, Inc., 746 F.2d 1312, 1315 (7th Cir.1984) (Delcostello v. International Brotherhood of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) retroactively applied where the decision represented "a clarification of the law, not a 'clear break' with past precedent.") Although Landahl concerns the retroactive application of a judicial rather than administrative decision, the considerations governing retroactivity are strikingly similar. Compare Chevron Oil Co. v. Huson, 404 U.S. 97, 106-07, 92 S.Ct. 349, 355-56, 30 L.Ed.2d 296 (1971) with Retail, Wholesale and Department Store Union v. NLRB, 466 F.2d 380, 390 (D.C.Cir.1972). Like a judicial body, an administrative tribunal remains free to clarify its position on a case-by-case basis. SEC v. Chenery Corp., 332 U.S. 194, 202-03, 67 S.Ct. 1575, 1580-81, 91 L.Ed. 1995 (1946); K. Davis, Administrative Law Sec. 20.7 (2d Ed.1983).
 Although coming on the heels of changes in the composition of the Board, the decision was a clear example of an administrative body reviewing its earlier decisions which were replete with arguments on all sides of the issue, and creating a new majority to support an earlier viewpoint expressed in dissent. See Local 900, supra, 727 F.2d at 1188.
 
 
 [2]
 In ordering enforcement in Gulton, the D.C. Circuit dealt extensively with the retroactivity question, and, in especially pertinent part, observed:
 The Merits of the Retroactivity Claim. In determining whether a new rule developed in adjudication should be given retroactive effect, the ill effects of "retroactivity must be balanced against the mischief of producing a result which is contrary to a statutory design or to legal and equitable principles." SEC v. Chenery Corp., 332 U.S. 194, 203 [67 S.Ct. 1575, 1581, 91 L.Ed. 1995] ... (1947). More specifically, courts often consider five factors in evaluating that balance:
 (1) whether the particular case is one of first impression, (2) whether the new rule represents an abrupt departure from well established practice or merely attempts to fill a void in an unsettled area of law, (3) the extent to which the party against whom the new rule is applied relied on the former rule, (4) the degree of the burden which a retroactive order imposes on a party, and (5) the statutory interest in applying a new rule despite the reliance of a party on the old standard.
 Retail, Wholesale & Department Store Union v. NLRB, 466 F.2d 380, 390 (D.C.Cir.1972).
 For a variety of reasons, it is often appropriate to apply a rule in the first case in which a given problem arises, ... but the present case is hardly one of first impression; as is evident from the discussion in part II, superseniority clauses have been litigated for years. At the same time, however, the reasons against applying a new rule in a case of second impression, principally "lack of notice and the degree of reliance on former standards, "... are not compelling here. The cases since 1975 have demonstrated widely divergent views among the Board members and have been decided on several bases. The union surely had notice that superseniority clauses were under attack and were not wholly secure, and there is no evidence that the union relied on any previous Board rule in fashioning this particular superseniority clause. Given the confusion in the Board's and courts' decisions over the years, the new rule cannot be called an abrupt break with a well-settled policy; the unanimity of the new decision, moreover, looks much like an "attempt[ ] to fill a void."
 Neither does the union fare well on the third factor--reliance....
 Local 900, International Union of Electrical Workers v. NLRB, 727 F.2d 1184, 1194-95 (D.C.Cir.1984).
 The record in the instant case is silent as to any reliance placed by the union. At the most it indicates that the super-seniority clause was in existence no later than 1970 and was expanded to include stewards between 1970 and 1979. The complained of exercise of the clause occurred on August 31, 1979 for the recording secretary and on July 25, 1980 for the treasurer.