

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-26-2002

# Allegheny Ludlum v. NLRB

Precedential or Non-Precedential: Precedential

Docket No. 01-2338

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

## Recommended Citation

"Allegheny Ludlum v. NLRB" (2002). *2002 Decisions.* Paper 534.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/534

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

        Filed August 26, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-2338

ALLEGHENY LUDLUM CORPORATION,
        Petitioner

v.

NATIONAL LABOR RELATIONS BOARD,
        Respondent

* UNITED STEELWORKERS,
        Intervenor

* (Per Clerk's Order dated 6/21/01)

No. 01-4536

NATIONAL LABOR RELATIONS BOARD,
        Petitioner

v.

ALLEGHENY LUDLUM CORPORATION,
        Respondent

* UNITED STEELWORKERS,
        Intervenor

* (Per Clerk's Order dated 7/5/01)

On Petition for Review and Cross-Petition for Enforcement
of an Order of the National Labor Relations Board
(6-CA-26862)

Argued February 7, 2002

Before: SLOVITER and AMBRO, Circuit Judges,
and SHADUR, District Judge*

(Filed: August 26, 2002)

        J. Anthony Messina
        Vincent J. Pentima (Argued)
        Klett Rooney Lieber & Schorling
        Philadelphia, PA 19103

         Attorneys for Allegheny
        Ludlam Corporation

        Arthur F. Rosenfeld

        General Counsel
        John E. Higgins, Jr.
         Deputy General Counsel
        John H. Ferguson
         Associate General Counsel
        Aileen A. Armstrong
         Deputy Associate General Counsel
        Robert J. Englehart
         Supervisory Attorney
        James M. Oleske, Jr. (Argued)
         Attorney
        National Labor Relations Board
        Washington, D.C. 20570

         Attorneys for National Labor
        Relations Board
_____

*Hon. Milton I. Shadur, United States Senior District Judge for the
Northern District of Illinois, sitting by designation.

2

        Richard J. Brean (Argued)
        Associate General Counsel
        United Steelworkers of America
        Pittsburgh, PA 15222

         Attorney for Intervenor
        United Steelworkers of America

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Allegheny Ludlum Corporation petitions for review of the
decision of the National Labor Relations Board (NLRB or
"the Board") that Allegheny Ludlum committed an unfair
labor practice in soliciting employees to appear in an anti-
union campaign video. Following remand from the Court of
Appeals for the District of Columbia Circuit directing the
Board to articulate a clear standard that reconciled
employees' rights to organize as protected by the Board's
polling doctrine with employers' free speech rights, the
Board filed a supplemental decision purporting to
announce such a standard. The Board concluded that
Allegheny Ludlum violated that standard when it solicited
employees to appear in an anti-union video. Allegheny
Ludlum filed a petition for review and the Board cross-
applied for enforcement of the order.

I.

A.

Facts

Allegheny Ludlum is a manufacturer of specialty steel
products in Western Pennsylvania. In July 1994, the United

Steelworkers of America ("the Union"), who already
represented Allegheny Ludlum's production employees,
began organizing to represent its salaried, non-exempt
employees. On October 4, 1994, the Union filed an election
petition with the NLRB and an election was scheduled for

3

December 2, 1994. Prior to the election, Allegheny Ludlum
campaigned vigorously against the Union, employing
outside consultants to formulate an anti-union campaign
strategy.

In mid-November, Allegheny Ludlum began production of
a videotape for use in its anti-union campaign, seeking to
persuade its salaried employees to vote against the Union.
Allegheny Ludlum's Manager of Communication Services,
Mark Ziemianski, personally supervised the filming by an
outside camera crew. The filming occurred on the premises
of the company over a period of three days. On the first
day, November 14, 1994, Ziemianski, accompanied by the
camera crew, approached several employees at their desks
and asked them if they would consent to be videotaped.
Those who agreed were instructed to sit at their desks, turn
to the camera, smile, and wave.

Although some employees filmed that day were given
advance written notice explaining that the video would be
used in the company's election campaign and that they
could decline to participate, others were given no notice
until after they were filmed. The notice explained that
anyone who did not wish to appear in the video could
contact one of two company managers to be edited out of
the video. James Goralka, one of the employees who had
been filmed before seeing the notice, called Joyce Kurcina,
one of the two managers listed on the notice, and asked
that he and several of his co-workers be edited out of the
video. Kurcina instructed him to contact Ziemianski who
then informed Goralka that it would be "no problem" to
remove them from the tape but that Goralka needed to put
the request in writing listing the employees' names who did
not wish to appear in the video. Goralka complied and he
and the listed co-workers were deleted from the video.

The filming continued on November 15 and 16. Unlike
the first day, Ziemianski prepared two written notices that
were distributed to employees in advance, either by
handing them out when the film crew entered work areas or
by interoffice mail. One notice stated:

> Please be advised that a film crew will be in and
> around your work areas filming footage for an

4

> upcoming video presentation that the company will use
> to present the facts about the current election
> campaign involving the Steelworkers. If you prefer not

> to be used in footage, please advise either Joyce
> Kurcina . . . or Steve Spolar . . . as soon as possible.
> We will be happy to accommodate your request.

App. at 122. Joyce Kurcina is Allegheny Ludlum's Director
of Employee Relations and Steve Spolar is Allegheny
Ludlum's Human Relations Counsel.

The other notice was identical in all material respects
except that it instructed employees to "advise the video
crew," rather than Kurcina or Spolar, if they did not want
to appear in the video. App. at 123. Ultimately, the
company filmed approximately eighty employees, or 17% of
the voting unit. Roughly thirty employees provided
Ziemianski with written requests to be excluded from the
video. Others declined to appear when approached by the
film crew or simply left the work area when the film crew
was present. In addition, a number of employees
complained to the Union about the filming and the Union
contacted Allegheny Ludlum to express its concern that the
taping was coercive. The filming continued and eventually
the employees were required to watch the finished video
during business hours.

The completed video contained testimony by employees
expressing their satisfaction with the status quo, their
dissatisfaction with union representation at prior employers
or in different units of Allegheny Ludlum, and their
discontent with the Union's representation in particular.
Several employees noted that unionized segments of
Allegheny Ludlum had experienced layoffs, while a narrator
noted that nonunion employees had experienced no layoffs
since 1980. The video concluded with footage of employees
waving at the camera, accompanied by upbeat music
containing such lyrics as "Allegheny Ludlum is you and
me," and stating reasons to vote against union
representation.

Both the Union and Allegheny Ludlum employed
additional campaign strategies in the weeks preceding the
election. In the election, held on December 2, 1994, the

5

votes against union representation exceeded the votes in
favor, 237 to 225.

B.

Procedural Posture

Following the election, the Union filed charges with the
Board against Allegheny Ludlum alleging a number of
unfair labor practices and objectionable conduct. After a
hearing, the administrative law judge (ALJ) held that
Allegheny Ludlum violated section 8(a)(1) of the National
Labor Relations Act (NLRA), 29 U.S.C. S 158(a)(1) (2002), by
(1) unlawfully interrogating one employee about his union
support, disparaging employees because of their union

support, and impliedly threatening employees that support for the Union would be futile; (2) threatening employees with more onerous work conditions if they selected the Union as their representative; (3) polling employees about their union sentiments through the above-described solicitation to appear in the video; (4) sending a newsletter to employees impliedly threatening them with loss of jobs and job security; and (5) threatening employees in a similar manner through the comments of the chief executive officer. Allegheny Ludlum Corp., 320 N.L.R.B. 484, 507 (1995). The ALJ also concluded that Allegheny Ludlum violated sections 8(a)(1) and (3) of the NLRA, 29 U.S.C. S 158(a)(1) and (3), by terminating an employee after the election because of his union activity. Id. The ALJ directed a second election and ordered Allegheny Ludlum to reinstate the unlawfully discharged employee and make him whole for any loss of wages or benefits, cease and desist from its unlawful practices, and post a remedial notice informing employees of their rights. Id. at 508. The Board, with one member concurring in part and dissenting in part, affirmed the ALJ's rulings, findings, and conclusions of law, and adopted its recommended order. Id. at 484-85.

Allegheny Ludlum filed a petition for review in the United States Court of Appeals for the District of Columbia Circuit challenging the Board's decision. That court enforced the

6

Board's order except with respect to the solicitation of employees to appear in the video. Allegheny Ludlum Corp. v. NLRB, 104 F.3d 1354, 1358-64 (D.C. Cir. 1997). The court noted the existence of a tension between an employee's right not to be subject to unlawful polling which derives from section 8(a)(1) of the NLRA1 and an employer's right to free speech recognized in section 8(c) of the NLRA,2 and questioned "whether employers can ever legally include visual images of employees in campaign materials without running a heavy risk of later being found in violation of the [NLRA] for illegally 'polling' their employees." Id. at 1358 (emphasis in original). Specifically, the court was troubled by the interaction of cases finding "polling" unlawful and the decision in Sony Corp. of America, 313 N.L.R.B. 420 (1993), which found that an employer violated section 8(a)(1) by videotaping its employees for use in an anti-union presentation without obtaining the consent of those employees. Concluding that resolution of the tension required "determinations [which] are well suited to the Board's expertise and experience," the court remanded this issue to the Board "for further consideration and the articulation of a clearer Board policy as to how the employers may lawfully proceed." Allegheny Ludlum Corp., 104 F.3d at 1364.

After briefing by the parties, the Board filed a Supplemental Decision and Order to address the issues remanded by the Court of Appeals. Allegheny Ludlum Corp., 333 N.L.R.B. No. 109, 2001 WL 855870 (Mar. 30, 2001).

The Board held that the remand required it to answer two
questions: (1) "whether an employer may lawfully ask
employees to participate in a campaign videotape and, if so,

_____

1. Section 8(a)(1) provides:

    (a) Unfair labor practices by employer

    It shall be an unfair labor practice for an employer--

    (1) to interfere with, restrain, or coerce employees in the
    exercise of the rights guaranteed in section 157 of this title.

29 U.S.C. S 158(a)(1).

2. Section 8(c) protects the "expressing of any views, argument, or
opinion, or the dissemination thereof." 29 U.S.C.S 158(c).

under what circumstances such a request may be made;"
and (2) "in cases where an employer has not asked
employees, in advance, whether they wish to participate in
a campaign videotape . . . whether, and if so under what
circumstances, an employer may lawfully include images of
the employees in the videotape." Id. at *8. It is the first of
these questions that is relevant to this petition for review.

The Board looked for guidance to cases that have
examined employers' distribution of anti-union
paraphernalia to employees. The Board explained that
those cases found violations of section 8(a)(1) where the
employer directly offered the anti-union paraphernalia to
employees, placing them in the "position of having to accept
or reject the [employer's] proffer, thereby disclosing their
preference for or against the union." Id. (citing A.O. Smith
Auto. Prods. Co., 315 N.L.R.B. 994 (1994)); see also Barton
Nelson, Inc., 318 N.L.R.B. 712, 712-13 (1995); Kurz-Kasch,
Inc., 239 N.L.R.B. 1044, 1047 (1978). The Board noted that
in contrast no violation was found in cases in which an
employer made anti-union paraphernalia available from a
central location absent any evidence of employer pressure
to reveal a preference. Allegheny Ludlum, 2001 WL 855870,
at *9 (citing Schwartz Mfg. Co., 289 N.L.R.B. 874 (1988);
Jefferson Stores, Inc., 201 N.L.R.B. 672 (1973)). From these
cases, the Board devised the standard that an employer
may lawfully solicit employees to appear in a campaign
video provided the employer meets the following five
requirements:

    1. The solicitation is in the form of a general
    announcement which discloses that the purpose of the
    filming is to use the employee's picture in a campaign
    video, and includes assurances that participation is
    voluntary, that nonparticipation will not result in
    reprisals, and that participation will not result in
    rewards or benefits.

2. Employees are not pressured into making the decision in the presence of a supervisor or. [sic]

3. There is no other coercive conduct connected with the employer's announcement such as threats of reprisal or grants or promises of benefits to employees who participate in the video.

4. The employer has not created a coercive atmosphere by engaging in serious or pervasive unfair labor practices or other comparable coercive conduct.

5. The employer does not exceed the legitimate purpose of soliciting consent by seeking information concerning union matters or otherwise interfering with the statutory rights of employees.

Id. at *13.

In applying these requirements to the instant case, the Board found that Allegheny Ludlum violated section 8(a)(1) "by approaching individual employees and asking them to consent to be filmed for the purpose of a campaign videotape, and by requiring employees to register an objection with an agent of [Allegheny Ludlum] in order to avoid being including in its campaign videotape." Id. at *16. The Board noted that Allegheny Ludlum violated the first requirement by not using a general announcement and forcing "employees 'to make an observable choice that demonstrates their support for or rejection of the union.' " Id. (quoting Barton Nelson, Inc., 318 N.L.R.B. at 712). Additionally, the Board found that Allegheny Ludlum failed to give the employees the required assurances that there would be no reprisals for non-participation or benefits for participation and that Allegheny Ludlum committed other unfair labor practices, creating "an atmosphere which would reasonably tend to coerce employees into agreeing to participate in the videotape." Id.

Allegheny Ludlum petitions for review of this decision on several grounds. First, it contends that its efforts to obtain employee consent to videotaping did not constitute a"poll." Second, it argues that the Board's five requirements are "arbitrary, irrational and violate an employer's free speech rights . . . as well as the Board's obligation to maintain neutrality." Br. of Allegheny Ludlum at 3. Third, it argues that the Board improperly applied its new requirements retroactively to this case. Finally, Allegheny Ludlum contends that the Board erred in finding that its efforts violated the articulated requirements. The Board cross applies for enforcement of the order.

The United Steelworkers of America filed a brief as an intervenor on the side of the Board.

II.

JURISDICTION AND STANDARD OF REVIEW

A.

Jurisdiction

The Board had jurisdiction under 29 U.S.C. S 160(a), which authorizes the Board to prevent unfair labor practices. We have jurisdiction to review a decision of the Board pursuant to 29 U.S.C. S 160(e) and (f).

B.

Standard of Review

We must "defer to the requirements imposed by the Board if they are rational and consistent with the[National Labor Relations] Act, and if the Board's explication is not inadequate, irrational or arbitrary." Allentown Mack Sales & Serv., Inc. v. NLRB, 522 U.S. 359, 364 (1998) (quotations and citations omitted). "Familiar principles of judicial deference to an administrative agency apply to the NLRB's interpretation of the NLRA." Quick v. NLRB , 245 F.3d 231, 240-41 (3d Cir. 2001) (citing Holly Farms Corp. v. NLRB, 517 U.S. 392, 398-99 (1996)). We must uphold the"NLRB's construction of the NLRA . . . if it is 'reasonably defensible.' " Id. at 241 (quoting Ford Motor Co. v. NLRB, 441 U.S. 488, 497 (1979)). Our standard of review is governed by the test articulated in Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). See Stardyne, Inc. v. NLRB, 41 F.3d 141, 147 (3d Cir. 1994) (noting that under Chevron, " 'if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute' ") (quoting Chevron, 467 U.S. at 843).

10

When reviewing the Board's determination in a particular case, this court must "accept the Board's factual determinations and reasonable inferences derived from [those] determinations if they are supported by substantial evidence." Stardyne, 41 F.3d at 151; see also 29 U.S.C. S 160(e), (f). We must uphold a Board decision"as long as it is rational and consistent with the Act, even if we would have formulated a different rule had we sat on the Board." NLRB v. Curtin Matheson Scientific, Inc., 494 U.S. 775, 787 (1990) (citations omitted). Thus, we give deference to the Board's decision in this case unless we conclude it is irrational, arbitrary, or unsupported by substantial evidence.

III.

DISCUSSION

A.

Polling

Allegheny Ludlum argues that the Board's ultimate conclusion was faulty because the Board proceeded on the inaccurate premise that Allegheny Ludlum's attempts to videotape employees constituted a "poll." The Board has previously held that "any attempt by an employer to ascertain employee views and sympathies regarding unionism generally tends to cause fear of reprisal in the mind of the employee if he replies in favor of unionism and, therefore, tends to impinge on his Section 7 [29 U.S.C. S 157] rights." Struksnes Constr. Co., 165 N.L.R.B. 1062, 1062 (1967). Under section 8(a)(1) of the NLRA, it is an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title," 29 U.S.C. S 158(a)(1), which include, inter alia, the rights to self-organization and collective bargaining, and the corresponding right to refrain from such activities. 29 U.S.C. S 157. It has long been the Board's position that an employer may violate section 8(a)(1) if it attempts to discern

11

the union sentiments of its employees. See, e.g. , Struksnes, 165 N.L.R.B. at 1063 & n.18 (collecting cases).

As the D.C. Circuit noted in this case, the "kind of employer actions [that] constitute a 'poll' does not depend on their formal nomenclature; the key is their practical effect of tending to instill in employees a reasonable belief that the employer is trying to find out whether they support or oppose the union." Allegheny Ludlum Corp. v. NLRB, 104 F.3d 1354, 1360 (D.C. Cir. 1997). This happens whenever "the employees are forced to make an observable choice that demonstrates their support for or rejection of the union." Barton Nelson, Inc., 318 N.L.R.B. 712, 712 (1995).

Allegheny Ludlum argues that its actions did not constitute a "poll" because its purpose in seeking to videotape its employees was not to discern their views toward the union. However, subjective intent is not an element of the definition of "polling." As the D.C. Circuit observed,

> We note that whether this consent solicitation would constitute an unlawful interference with S 7 rights does not turn on the malevolence or innocence of the employer's intent in seeking the employees' consent; rather the relevant question is whether the solicitations would tend to create among the employees a reasonable impression that the employer was trying to discern their union sentiments.

Allegheny Ludlum, 104 F.3d at 1362 (emphasis in original). In other words, the test is an objective test in which the

employer's intent is irrelevant and the proper inquiry is the impression of a reasonable employee.

Moreover, the inquiry is also objective as to the effect on employees. Whether a particular employee opted not to participate in the company's videotape for reasons of union loyalty or for wholly unrelated reasons is irrelevant because the inquiry focuses on whether the solicitations would "tend to create" an impression that the company was trying to discern union sentiments, not whether they actually created such an impression. See, e.g., Graham Architectural Prods. Corp. v. NLRB, 697 F.2d 534, 537-38 (3d Cir. 1983); NLRB v. Garry Mfg. Co., 630 F.2d 934, 938 (3d Cir. 1980).

Allegheny Ludlum contends that this case is like cases in which the Board decided that the conduct of the employer did not constitute a "poll" despite the employer's distribution of anti-union paraphernalia. However, the cases cited by Allegheny Ludlum differ as they involve instances in which an employer made anti-union paraphernalia available at a central location or made it available for sale to the employees upon the employees' initiative. See Holsum Bakers of P. R., Inc., 320 N.L.R.B. 834, 839 (1996) (finding no coercive conduct where employer made anti-union stickers available to employees without any supervisory involvement or evidence of observable choice); Okla. Installation Co., 309 N.L.R.B. 776, 776 (1992) (finding no coercive conduct where employer provided all employees with caps and t-shirts bearing company logo along with anti-union letter), overruled on other grounds by 27 F.3d 567 (6th Cir. 1994); Daniel Constr. Co., 266 N.L.R.B. 1090, 1099-10 (1983) (finding no coercion where employer made jackets with company logo available for sale because the employees first expressed interest in the jackets and the jackets had been sold before the union drive began).

This case more closely resembles those cases in which the Board found an unlawful poll because the employees were forced to make an observable choice about their union sympathies. See, e.g., Barton Nelson, 318 N.L.R.B. at 712 (finding it coercive for supervisors to hand out anti-union hats to employees because it forced the employees to make an observable choice). Thus, the Board did not err in considering this case under its "polling" precedent.

B.

Board's Requirements

Allegheny Ludlum argues that the standard set forth by the Board is arbitrary and irrational because it violates an employer's free speech rights and renders it virtually impossible for an employer to create a videotape for use in an anti-union campaign. Allegheny Ludlum notes that the NLRA protects employer speech so long as that speech does

not threaten reprisal for supporting unionization or promise
some benefit for rejecting unionization, and contends that
its speech is protected because it did neither. The statutory
provision on which it relies, section 8(c), provides:

> The expressing of any views, argument, or opinion, or
> the dissemination thereof, whether in written, printed,
> graphic, or visual form, shall not constitute or be
> evidence of an unfair labor practice under any of the
> provisions of this subchapter, if such expression
> contains no threat of reprisal or force or promise of
> benefit.

29 U.S.C. S 158(c). This section implements employers' First
Amendment rights under the Constitution. See, e.g., NLRB
v. Gissel Packing Co., 395 U.S. 575, 617 (1969) (holding
S 158(c) "merely implements the First Amendment").
However, as the D.C. Circuit noted in remanding this case,
" '[a]ny assessment of the precise scope of employer
expression . . . must be made in the context of its labor
relations setting,' and . . . 'an employer's rights cannot
outweigh the equal rights of the employees to associate
freely.' " Allegheny Ludlum, 104 F.3d at 1361 (alterations in
original) (quoting Gissel, 395 U.S. at 617). As the Gissel
Court explained, "any balancing of those rights must take
into account the economic dependence of the employees on
their employers, and the necessary tendency of the former,
because of that relationship, to pick up intended
implications of the latter that might be more readily
dismissed by a more disinterested ear." Gissel, 395 U.S. at
617.

Employer "polling" is not expression protected by section
8(c). See Struksnes, 165 N.L.R.B. at 1062 n.8 ("It is well
established that an employer, in questioning his employees
as to their union sympathies, is not expressing views,
argument, or opinion within the meaning of Section 8(c) of
the [NLRA], as the purpose of an inquiry is not to express
views but to ascertain those of the person questioned."); see
also Allegheny Ludlum, 104 F.3d at 1361 (quoting same).
Although the statute does not forbid employer speech
unaccompanied by threats of reprisal or promise of
benefits, employer "polling" is defined by its "tendency to
'cause fear of reprisal in the mind of the employee.' " Hajoca

Corp. v. NLRB, 872 F.2d 1169, 1173 (3d Cir. 1989) (quoting
Struksnes, 165 N.L.R.B. at 1062).

Allegheny Ludlum contends that the Board's decision in
this case conflicts with our earlier decision in Graham
Architectural Products Corp. v. NLRB, 697 F.2d 534 (3d Cir.
1983), where we held that casual questions regarding
unionization by supervisors, who often work closely with
employees and may be expected to "discuss a range of

subjects of mutual interest," are not necessarily coercive. Id. at 541. In that case, we found instances of casual questioning did not violate section 8(c) where the inquiries were not "part of a full scale 'anti-union campaign orchestrated by the highest levels of . . . management.' " Id. at 540 (alterations in original) (quoting Ethyl Corp., 231 N.L.R.B. 431, 433 (1977)). We added that "it is important to bear in mind that there was no history of Company hostility to the Union." Id. at 539.

These facts stand in stark contrast to those in this case in which there was a vigorous anti-union campaign underway at the time of the challenged inquiries. Ziemianski did not work closely with the questioned employees, and hence was not likely to engage in casual conversation with them. Therefore, his requests to videotape the employees do not fall within the "realities of the workplace" that were prevalent in Graham , 697 F.2d at 541. The facts of this case are more closely aligned with the direct solicitations in the paraphernalia cases than the casual conversations in Graham.

We conclude that the Board's decision is a rational resolution of the tension between the employer's First Amendment rights and the employee's right to organize freely. In responding to the D.C. Circuit's remand, the Board exercised its "authority to formulate rules to fill the interstices of the [NLRA's] broad statutory provisions." NLRB v. Curtin Matheson Scientific, Inc., 494 U.S. 775, 786 (1990) (quotation omitted). The Board's five-factor test both protects employees from direct solicitations by employers and allows employers to create anti-union campaign videos within the constraints of Sony.

The first requirement -- that solicitations come in the form of a general announcement that discloses the

15

purposes of the filming and assures that participation is voluntary and will not result in reprisals or rewards -- is derived directly from the paraphernalia cases, which have held acceptable the distribution of anti-union paraphernalia from a central location, but not individualized inquiries that require an employee to make an observable choice. See, e.g., Barton Nelson, 318 N.L.R.B. at 712. The second requirement -- that employees not be pressured into making a decision in the presence of a supervisor-- echoes this concern that employees not be forced to make observable choices. The final three requirements simply reflect prohibitions against conduct that independently violates the NLRA. See generally 29 U.S.C.S 158. In fact, the Board recognized its need to be even more protective in the videotaping context than in the paraphernalia cases because an employee who changes his or her views on unionization may simply remove an anti-union button or hat without notifying the employer, whereas a video creates a permanent record unless an employee openly declares to the employer his or her desire to be removed from the

video. Allegheny Ludlum, 2001 WL 855870, at *12.

Allegheny Ludlum contends that the five-factor test is unduly burdensome because it effectively eliminates an employer's ability to videotape employees in the workplace during an election campaign. This contention considerably overstates the prohibition. As the Board's decision clearly states, an employer may make a general announcement regarding its desire to videotape employees for use in a campaign video and subsequently, videotape anyone who comes forward, as long as it makes the necessary assurances.3 These guidelines do not make it "virtually

_____

3. The D.C. Circuit suggested in dictum that an employer would not violate the polling doctrine by soliciting employees to appear in anti-union videos if the employer sought "to include only those employees who have on their own initiative clearly expressed opposition to union representation." Allegheny Ludlum, 104 F.3d at 1363-64. The Board disagrees, explaining that an employee has the "right to choose, free from any employer coercion, the degree to which he or she will participate in the debate concerning representation." Allegheny Ludlum, 2001 WL 855870, at *10. Because the company in this case solicited employees indiscriminately and did not limit its solicitation to employees who were known union opponents, we do not reach to decide an issue not presented under the facts before us.

16

impossible for an employer to videotape its employees in the workplace during the campaign effort" as Allegheny Ludlum contends, Br. of Allegheny Ludlum at 44, nor has Allegheny Ludlum shown why a general announcement is "simply not an effective means" for securing participants. Reply Br. at 12. Rather, the Board's requirements allow an employer to videotape its employees, while at the same time barring the employer from placing an employee in the position of having to express openly a willingness or unwillingness to appear in an anti-union video. The Board's decision is consistent with the purposes of the NLRA and reasonably balances the rights created under sections 8(a)(1) and 8(c). Thus, we defer to the Board's accommodation of the competing interests. See Stardyne, Inc. v. NLRB, 41 F.3d 141, 147-48 (3d Cir. 1994) (deferring to Board's balancing of competing employer and employee interests where that balancing was a "permissible construction of the Act").4

C.

Retroactivity

As we have no basis to reject the standard set forth by the Board governing the employer's solicitation of

_____

4. Allegheny Ludlum argues that the Board's decision violates an apparent mandate to maintain neutrality created in NLRB v. Savair Manufacturing Co., 414 U.S. 270 (1973). It contends that Savair created

an obligation of neutrality in enforcing the NLRA that "prevents the Board from allowing a union to film employees while denying the same medium to an employer." Br. of Allegheny Ludlum at 41. We need not reach the merits of this argument because Allegheny Ludlum did not raise this issue before the Board as required by the NLRA. 29 U.S.C. S 160(e), (f). Although Allegheny Ludlum raised this issue before the D.C. Circuit, we have interpreted this rule strictly to require a party at least to " 'object[ ] to the Board's decision in a petition for reconsideration or rehearing' " before the Board. NLRB v. Konig, 79 F.3d 354, 359 (3d Cir. 1996) (quoting Woelke & Romero Framing, Inc. v. NLRB, 456 U.S. 645, 666 (1982)). In any event, the D.C. Circuit's remand was limited to devising "clear guidelines as to how to proceed in regard to company videotaping of employees." 104 F.3d at 1363. The Board was not under direction to consider union videotaping.

employees to appear in anti-union campaigns, we turn to Allegheny Ludlum's challenge to what it terms the retroactive application of that standard to its case. We must first consider the argument made by both the Board and the Union that Allegheny Ludlum's failure to raise its retroactivity argument before the Board bars it from raising that claim before this court. They point to section 10(e) of the NLRA, 29 U.S.C. S 160(e), which states,"No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." Allegheny Ludlum made no objection on grounds of retroactivity before the Board despite its opportunity to do so in its Statement of Position before the Board or in a motion for reconsideration. See Konig, 79 F.3d at 360 (finding "failure to raise the argument, and . . . failure to file a petition for reconsideration, deprives this court of jurisdiction to address this question under section 10(e) of the NLRA").

However, as Allegheny Ludlum correctly notes, a number of courts of appeals have permitted parties to raise retroactivity arguments despite the parties' failure to raise the issue before the Board. See, e.g., Ryan Heating Co. v. NLRB, 942 F.2d 1287, 1288 (8th Cir. 1991); Oil, Chem. & Atomic Workers Int'l Union, Local 1-547 v. NLRB, 842 F.2d 1141, 1144 n.2 (9th Cir. 1988); NLRB v. Wayne Transp., 776 F.2d 745, 749-50 (7th Cir. 1985); Local 900, Int'l Union of Elec. Workers v. NLRB, 727 F.2d 1184, 1190-94 (D.C. Cir. 1984). Those courts noted that the purpose of section 10(e) is to ensure that the Board had notice of all issues within its jurisdiction and to prevent repetitive appeals. See, e.g., Wayne Transp., 776 F.2d at 749. Thus, when it was clear that the putatively foreclosed party objected to the new pronouncements by the Board, the courts held that the Board was on notice, explaining that "[r]etroactivity is necessarily an issue any time adjudication results in a new rule of law." Local 900, 727 F.2d at 1193-94.

The Board and the Union respond that these cases are inapplicable because they involve situations where the

objecting party was successful before the ALJ under an

existing standard and then lost before the Board under a newly adopted standard. Therefore, the courts in those cases concluded that the petitioners implicitly raised the issue of retroactivity by virtue of their argument that the old standard should apply. In this case, Allegheny Ludlum, which was unsuccessful before the ALJ, was in favor of the articulation of a new rule and actively participated in the debate before the Board with respect to the drafting of a new standard. It was therefore not surprised by the articulation of a new standard, and should not have been surprised that the standard was applied to it.

However, we need not decide this issue because even if Allegheny Ludlum's retroactivity argument survives its failure to comply with section 10(e), its argument fails on the merits. We must defer to agency retroactivity rulings unless the ruling creates "manifest injustice." Laborers' Int'l Union v. Foster Wheeler Corp., 26 F.3d 375, 390-92 (3d Cir. 1994); Int'l Assoc. of Bridge, Structural & Ornamental Iron Workers, Local 3 v. NLRB, 843 F.2d 770, 780-81 (3d Cir. 1988). The factors for determining whether retroactive application of a Board decision creates a manifest injustice are " '(1) whether the particular case is one of first impression, (2) whether the new rule represents an abrupt departure from well established practice or merely occupies a void in an unsettled area of law, (3) the extent to which the party against whom the new holding is applied in fact relied on the former rule, (4) the degree of the burden imposed, and (5) the statutory interest in application of this new rule.' " Laborers' Int'l Union, 26 F.3d at 392 (quoting E.I. Wiegand Div. v. NLRB, 650 F.2d 463, 471 n.5 (3d Cir. 1981)).

Where the case is one of first impression, the court "would be compelled either to apply the new rule retrospectively or to reject it, as the prohibition against advisory opinions assures that '[e]very case of first impression has a retroactive effect.' " Id. (citations omitted) (alteration in original) (quoting SEC v. Chenery Corp., 332 U.S. 194, 203 (1947)). As the D.C. Circuit made clear, the Board confronted a conflict between two doctrines, and thus the resulting synthesis was clearly a new rule, fulfilling the first criterion in favor of retroactive application.

Second, the case is not an abrupt departure from well established practice. Although the D.C. Circuit suggested an employer might infer that under Sony it was justified in soliciting the consent of employees, the D.C. Circuit also recognized that no well established practice existed in this area of the law when it stated that it was "confused and troubled by the sharply inconsistent approaches that the Board's ALJs have taken to the convergence of issues

presented by post-Sony videotaping of employees."
Allegheny Ludlum, 104 F.3d at 1363. The remand
specifically asked the Board to fill a void in an unsettled
area of the law satisfying the second criterion.

Third, there is no indication that Allegheny Ludlum relied
on Sony for its conduct. Not until this petition for review
did Allegheny Ludlum argue it relied on Sony. The Board
found that "there [is] no evidence that[Allegheny Ludlum]
had relied on Sony in structuring its antiunion
videotaping." Allegheny Ludlum, 2001 WL 855870, at *3.

Fourth, the degree of burden imposed is not high. In
Laborers' International Union, we explained that this inquiry
examines the monetary liability to the party and the party's
ability to pay. 26 F.3d at 393. Although this factor need not
be limited to financial burdens, the burden imposed on
Allegheny Ludlum is not great. Unlike the situation in
Laborers' International Union, Allegheny Ludlum suffers no
direct financial penalty. The sole burden created by the
Board in this case is its order requiring Allegheny Ludlum
to follow the new rule during any future campaign and to
post a remedial notice.

Fifth, the statutory interest in the application of the new
rule appears high. A rerun election has already been
ordered by the Board based on other unfair labor practices.
The new election thus may again implicate the same
controversy. Retroactive application ensures the existence
of an order that would prevent the company from engaging
in the same conduct in the future. In Laborers' International
Union, we concluded that there was a great statutory
interest in the retroactive application of a new rule "even
. . . where the dispute was purely of historical interest." Id.
at 392.

This court has previously observed the "truism that in
the context of adjudication, retrospectivity is, and has since
the birth of this nation been, the norm." Id.  at 394. In
Laborers' International Union, we concluded that the Board
rule would be applied retroactively even though"the first
and fourth factors favor neither party, . . . the third and
fifth factors militate in favor of the Union, and . . . the
second factor favors the defendants." Id. at 392. Because
the factors overwhelmingly favor retroactive application of
the Board's new standard in this case, Allegheny Ludlum's
argument fails.

D.

Substantial Evidence

Finally, Allegheny Ludlum argues that the Board's
application of its new rule to this case is not supported by
substantial evidence. As we stated at the outset, we must
uphold the Board's factual findings as "conclusive if
supported by substantial evidence on the record as a

whole." Quick v. NLRB, 245 F.3d 231, 240 (3d Cir. 2001). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Citizens Publ'g & Printing Co. v. NLRB, 263 F.3d 224, 232 (3d Cir. 2001) (alterations in original) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951)).

The Board applied the five requirements of its newly articulated standard to the facts of this case and concluded that Allegheny Ludlum's method of soliciting participants for its anti-union video was inconsistent with the requirements and thus, violated section 8(a)(1). We agree.

It is clear that directly soliciting individual employees does not meet the requirement that the "solicitation come as a general announcement." There was ample evidence to support the Board's finding that many employees"were subjected to requests to participate, which were coordinated by the Respondent's Manager of Communications." Allegheny Ludlum, 2001 WL 855870, at *16 (footnote omitted). On the first day, Ziemianski himself

approached individual employees, handed them a notice, and asked them directly if they would appear in the video. The notices were not in the form of a general announcement nor did they include assurances that participation was voluntary and would result in no benefits or reprisals, as required. Although the notices stated that the company would accommodate requests not to be included, that does not meet the required level of assurances regarding the consequences of that choice.

Finally, the Board found that Allegheny Ludlum had committed a number of other unfair labor practices, including "threats of job loss and layoffs and the discriminatory discharge of a leading union activist, creat[ing] an atmosphere which would reasonably tend to coerce employees into agreeing to participate in the videotape." Id. Allegheny Ludlum argues that the four unfair labor practices found by the Board are not relevant to this case and that one occurred after the filming and election. However, even if we disregard the practice that occurred after the election, the Board's finding that the company engaged in a number of unfair labor practices, in violation of the fourth requirement, is based on the record.

In order to meet the requirements set forth by the Board, an employer's solicitation of its employees to appear in an anti-union video must satisfy all five requirements. Because substantial evidence supports the Board's finding that Allegheny Ludlum failed to satisfy at least some of the requirements, we must uphold the Board's determination that Allegheny Ludlum violated section 8(a)(1).

IV.

CONCLUSION

For the reasons set forth, we will deny Allegheny
Ludlum's Petition for Review and grant the Board's
Application for Enforcement.

22

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

23